UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

NATASHA DELPHINE SHAFFER,       )
                                )
        Plaintiff,              )        No. CV-11-0284-FVS
                                )
                                )
             v.                 )        ORDER GRANTING
                                )        DEFENDANT'S MOTION
                                )        FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE, Commissioner )
of Social Security,             )
                                )
        Defendant.              )
                                )

        **BEFORE THE COURT** are cross-motions for summary judgment.
(ECF No. 13, 17).  Attorney Maureen Rosette represents plaintiff;
Special Assistant United States Attorney Leisa A. Wolf represents
the Commissioner of Social Security (defendant).   After reviewing
the administrative record and the briefs filed by the parties, the
court **GRANTS** defendant's Motion for Summary Judgment.

                            **JURISDICTION**

        Plaintiff applied for a period of disability and disability
insurance benefits on September 19, 2007, alleging disability as
of September 6, 2000 (Tr. 132).  Plaintiff amended her alleged
onset date from September 6, 2000, to February 11, 2002, at the
administrative hearing (Tr. 41-42).  The application was denied
initially and on reconsideration.

        Administrative Law Judge (ALJ) Moira Ausems held a hearing on
January 8, 2010 (Tr. 38-79), and issued an unfavorable decision on
March 5, 2010 (Tr. 19-31).  The Appeals Council denied review on
July 13, 2011 (Tr. 1-6).  The ALJ's March 2010 decision became the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on August 1, 2011 (ECF No. 1, 4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on April 15, 1976 (Tr. 126) and was 26 years old on the alleged onset date.  Plaintiff was involved in a motor vehicle accident in 2000 and, as a result, underwent an anterior lumbar interbody fusion in July 2002 and a posterior lumbar interbody fusion in January 2003 (Tr. 49).  She reported she last worked from October 2001 to February 2002 as a part-time cashier at Bed, Bath and Beyond (Tr. 48).  Plaintiff indicated she ended that employment because her manager wanted to make her a full-time employee and he was not able to give her enough breaks to sit down (Tr. 47).

At the time of the administrative hearing, plaintiff lived in a home with her husband, her mother and her two children, ages 6 and 3 (Tr. 51).  She stated that her husband "does everything," and she has a great support group of girlfriends who assist her with errands and the cleaning of her home (Tr. 51-52).  She testified she had been involved with the women's group since her 6-year-old was 2 (Tr. 52), or since approximately 2006 (Tr. 52). She stated her husband does the grocery shopping as well as all the housework, vacuuming, laundry, etc.  (Tr. 60, 64).

Plaintiff testified that she could probably sit a maximum of 20 minutes at one time (Tr. 56).  She stated most of her time is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1    spent laying down on a couch in an attempt to relieve her symptoms
2    (Tr. 56-57).  She indicated she would spend about six hours of an
3    eight-hour period laying down (Tr. 57).  Plaintiff stated lifting
4    a gallon of milk is a lot for her (Tr. 58-59), she could stand
5    about 20 minutes before needing to sit or lay down (Tr. 61), she
6    is not able to bend and pick something off the floor, nor is she
7    able to climb a flight of stairs (Tr. 62-63), and she has
8    difficulty sleeping at night because she is not able to get
9    comfortable due to her back problems (Tr. 63).

10                    **SEQUENTIAL EVALUATION PROCESS**

11        The Social Security Act defines disability as the "inability
12   to engage in any substantial gainful activity by reason of any
13   medically determinable physical or mental impairment which can be
14   expected to result in death or which has lasted or can be expected
15   to last for a continuous period of not less than twelve months."
16   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Social Security
17   Act also provides that a plaintiff shall be determined to be under
18   a disability only if any impairments are of such severity that a
19   plaintiff is not only unable to do previous work but cannot,
20   considering plaintiff's age, education and work experiences,
21   engage in any other substantial gainful work which exists in the
22   national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
23   Thus, the definition of disability consists of both medical and
24   vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
25   (9th Cir. 2001).

26        The Commissioner has established a five-step sequential
27   evaluation process for determining whether a person is disabled.
28   20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

is engaged in substantial gainful activities.  If so, benefits are
denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If
not, the decision maker proceeds to step two, which determines
whether plaintiff has a medically severe impairment or combination
of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

     If plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past.  If a plaintiff
is able to perform previous work, that plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At
this step, plaintiff's residual functional capacity (RFC) is
considered.  If plaintiff cannot perform past relevant work, the
fifth and final step in the process determines whether plaintiff
is able to perform other work in the national economy in view of
plaintiff's residual functional capacity, age, education and past
work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
*Bowen v. Yuckert*, 482 U.S. 137 (1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1      The initial burden of proof rests upon plaintiff to establish
2  a *prima facie* case of entitlement to disability benefits.
3  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
4  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
5  met once plaintiff establishes that a physical or mental
6  impairment prevents the performance of previous work.  The burden
7  then shifts, at step five, to the Commissioner to show that (1)
8  plaintiff can perform other substantial gainful activity and (2) a
9  "significant number of jobs exist in the national economy" which
10 plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
11 Cir. 1984).

12                          **STANDARD OF REVIEW**

13     Congress has provided a limited scope of judicial review of a
14 Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
15 the Commissioner's decision, made through an ALJ, when the
16 determination is not based on legal error and is supported by
17 substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
18 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
19 1999).  "The [Commissioner's] determination that a plaintiff is
20 not disabled will be upheld if the findings of fact are supported
21 by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
22 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
23 is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
24 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
25 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989).
26 Substantial evidence "means such evidence as a reasonable mind
27 might accept as adequate to support a conclusion." *Richardson v.*
28 *Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch

inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At step one, the ALJ found plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date, February 11, 2002, through the date last insured, September 30, 2006 (Tr. 21). At step two, she found plaintiff had severe impairments of "lumbar degenerative disc disease status-

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

post surgeries; obesity; post-traumatic stress disorder; depression; and pain disorder associated with both psychological factors and a general medical condition" (Tr. 21). At step three, the ALJ found plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 22). The ALJ assessed plaintiff's RFC during the relevant time period and determined that plaintiff could perform sedentary work except that she could not climb ladders, ropes or scaffolds; she could only stoop, kneel, bend, crouch, crawl and climb ramps or stairs on a less than occasional basis; and she could not perform tasks that would require the ability to work at a level higher than three on the specific vocational profile (Tr. 24).

At step four, the ALJ found that plaintiff could not perform her past relevant work as a material handler, sorter, food server, home health attendant, sales clerk, general clerk and cashier (Tr. 29). However, the ALJ concluded at step five that, considering plaintiff's age, education, work experience and RFC, and based on vocational expert testimony, there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including the jobs of Charge Account Clerk, Surveillance System Monitor and Telephone Quotation Clerk (Tr. 29-30). The ALJ thus determined that plaintiff was not under a disability within the meaning of the Social Security Act at any time from February 11, 2002, the alleged onset date, through September 30, 2006, the date last insured (Tr. 31).

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

**ISSUES**

Plaintiff alleges the ALJ erred because the substantial weight of the record evidence supports a more limited physical RFC determination. (ECF No. 14 at 12). Plaintiff specifically argues that the ALJ erred by finding that her testimony regarding her symptoms lacks credibility. (ECF No. 14 at 12-14). Plaintiff also contends the ALJ failed to properly evaluate the medical opinions of her treating physician, Michael Sikora, M.D. (ECF No. 14 at 14-17).

**DISCUSSION**

As explained by the ALJ, to be entitled to a period of disability and disability insurance benefits, plaintiff must establish disability between her alleged onset date, February 11, 2002, and her date last insured, September 30, 2006 (Tr. 25). Records which do not specifically address plaintiff's functioning during this period of time are not particularly relevant.

**I.  Plaintiff's Credibility**

Plaintiff first argues that the ALJ erred by failing to consider her testimony. (ECF No. 14 at 12-14). Plaintiff contends that the ALJ improperly found her less than fully credible and should have, instead, adopted plaintiff's testimony regarding her physical limitations. *Id*. Defendant asserts that the ALJ's conclusion that plaintiff was not entirely credible had substantial support in the record and should be upheld. (ECF No. 16 at 13-16).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific

cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 25).  The ALJ found plaintiff retained the RFC to perform a limited range of sedentary exertion level work during the relevant time period, from February 11, 2002 to September 30, 2006 (Tr. 24).

Following plaintiff's 2000 motor vehicle accident, an MRI in October 2001 revealed a minimal disc bulge, slight left paramedian disc protusion at L4-5, unchanged since last exam on October 8, 2000, that did not impact neural structures, a mild posterior disc protusion of L5-S1, and mild degenerative changes in her lower lumber facet joints (Tr. 25, 289).  In June 2002, Plaintiff was examined by Jeffery Larson, M.D., with complaints of back and

right leg pain (Tr. 25, 266).  Dr. Larson offered her an anterior
lumbar interbody fusion at L5-S1 which she underwent in July 2002
(Tr. 25, 266, 428).  On August 20, 2002, plaintiff indicated to
Dr. Larson that her symptoms were resolving (Tr. 26, 465).
Plaintiff reported she was "quite happy with the outcome of her
surgery" (Tr. 465).  However, on November 19, 2002, plaintiff
reported to Dr. Larson that her right leg pain had returned,
although it was not as sharp, and her back pain was the same as it
was prior to surgery (Tr. 26, 315).  As a result of her pain
complaints, plaintiff underwent a posterior lumbar interbody
fusion on January 2, 2003 (Tr. 300).  On February 12, 2003,
plaintiff reported significant posterolateral leg pain to Dr.
Larson (Tr. 26, 300).  A lumbar spine MRI completed in February
2003 showed no neural compression (Tr. 26, 341).  On May 7, 2003,
Dr. Larson referred plaintiff to Karen Stanek, M.D., for an
evaluation of her chronic right L5 radiculopathy (Tr. 341-342).

On May 28, 2003, Dr. Stanek examined plaintiff, who was
approximately 6 ½ weeks pregnant at the time (Tr. 339-340).
Plaintiff reported she was independent in her activities of daily
living (Tr. 339).  Dr. Stanek recommended plaintiff discontinue
straight-leg stretching, which she opined might be chronically
irritating plaintiff's sciatic nerve, apply heat and ice several
times a day, and walk as much as she was able (Tr. 26, 340).  On
June 25, 2003, plaintiff returned to Dr. Larson (Tr. 336).
Plaintiff reported her back pain had improved tremendously, her
right leg pain had also improved, and her right L5 radiculopathy
had resolved (Tr. 26, 336).  February 2, 2004 lumbosacral spine x-
rays revealed no evidence of abnormal motion at L5-S1 and no

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

instability at the fusion level (Tr. 26, 327).  On March 16, 2004, Dr. Larson indicated plaintiff was doing "extremely well" and had no new problems (Tr. 26, 413).  On May 3, 2005, plaintiff presented for an annual exam and reported doing very well with no specific concerns (Tr. 26, 353).

In October 2005, plaintiff was seen by Michael Sikora, M.D., for a recheck on her depression (Tr. 480-481).  Plaintiff indicated a secondary concern of lower back pain; however, the exam revealed a pleasant female in no apparent distress, her gait was normal, her straight leg raise tests were negative, and her motor strength, sensation and reflexes in the lower extremities were within normal limits (Tr. 480).  Plaintiff was diagnosed with sciatica (Tr. 481).  On June 7, 2006, plaintiff complained of ongoing low back pain with radiation down her legs (Tr. 491). Examining personnel noted mild to moderate pain and a reduced range of motion (Tr. 491).  On June 27, 2006, a lumbosacral MRI revealed satisfactory alignment of vertebral bodies, "somewhat moderate" central canal stenosis due to ligamentous hypertrophy, and well-preserved foramen (Tr. 27, 507).

The undersigned agrees with the ALJ that the above medical evidence from the relevant time period, as discussed above, does not reflect the level of limitation plaintiff has alleged in this case (Tr. 25).  While the limitations plaintiff identified at the administrative hearing may have described her physical abilities at the time of the administrative hearing on January 8, 2010, that restricted level of functioning is not consistent with the information provided in the medical record from the relevant time period in this case.  As noted by the ALJ, plaintiff's condition

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

appeared to resolve at least for a few years during the relevant time period, and "[f]or all intents and purposes, the claimant appeared to be taking care of one or two children while her husband worked" during that period of time (Tr. 27).

The ALJ indicated that, although plaintiff testified that she had daily assistance from a "support group" of girlfriends, her first mention of this group in the evidence occurred in July 2009 (Tr. 535), nearly 3 years after the date last insured (Tr. 27). She never mentioned to doctors during the relevant time period that she had additional assistance at home.

As further noted by the ALJ, Plaintiff's testimony at the administrative hearing regarding her physical limitations is inconsistent with the level of limitation she alleged in her Disability Report (Tr. 27). She testified that she could not lift any significant amount of weight, but stated in her Function Report she could lift 20 to 30 pounds occasionally (Tr. 149, 157).

Plaintiff's daily activities are also inconsistent with her allegations of disabling limitations during the relevant time period. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (it is well-established that the nature of daily activities may be considered when evaluating credibility). As indicated by the ALJ, plaintiff reported she prepares meals daily, folds and puts away laundry, washes dishes, sweeps, vacuums, and mows the lawn if someone starts the mower for her (Tr. 27, 154). Plaintiff additionally noted she did "everything" for her 7-month-old son at the time (Tr. 153). Plaintiff also reported to Dr. Stanek on May 28, 2003, that she was independent in her activities of daily living (Tr. 339).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for discounting plaintiff's subjective complaints are clear, convincing, and fully supported by the record.   Accordingly, the ALJ did not err by concluding that plaintiff's subjective complaints regarding the extent of her functional limitations during the relevant time period were not fully credible in this case.

**II.   Treating Physician**

Plaintiff next argues that the ALJ failed to provide convincing rationale for rejecting the opinion of her treating physician, Dr. Sikora.  (ECF No. 14 at 14-17).  Defendant responds that the ALJ gave specific and legitimate reasons for discounting Dr. Sikora's opinions, and these reasons were supported by substantial evidence in the record.  (ECF No. 16 at 5-13).

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id*. at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

contrary reports from examining physicians, and testimony from the
claimant that was inconsistent with the physician's opinion. *Id*.
at 1042-1043. Greater weight must be given to the opinion of
treating physicians, and in the case of a conflict "the ALJ must
give specific, legitimate reasons for disregarding the opinion of
the treating physician." *Matney v. Sullivan,* 981 F.2d 1016, 1019
(9th Cir. 1992).

On January 7, 2010, Dr. Sikora, plaintiff's treating
physician, provided a letter which opined that plaintiff has been
"disabled and sedentary" since her motor vehicle accident in 2000
(Tr. 620). On July 29, 2010, almost five months after the ALJ's
March 2010 decision was rendered, Dr. Sikora provided another
letter which stated that plaintiff "has been disabled before
September 30, 2006 and remains indefinitely and permanently
medically disabled" (Tr. 624).

As noted by the ALJ, outside of Dr. Sikora, none of
plaintiff's medical providers have opined that plaintiff could not
work because of her impairments. As discussed above, the medical
evidence of record supports the ALJ's determination that plaintiff
retained the RFC to perform a limited range of sedentary exertion
level work during the relevant time period. *See supra*. Moreover,
state agency medical consultant, Howard Platter, M.D., reviewed
plaintiff's medical evidence through 2007 and opined on December
31, 2007, that plaintiff could perform work at the light exertion
level (Tr. 523-530). On April 23, 2008, Dr. Platter's opinion was
affirmed by another state agency medical consultant, Norman
Staley, M.D. (Tr. 532). The ALJ ultimately determined that, when
considering the added impact of plaintiff's obesity, a relegation

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

to sedentary exertion better defined plaintiff's capacity during the relevant time period (Tr. 29).

Dr. Sikora's opinion in the January 2010 letter that plaintiff is "sedentary"[1] does not correlate with a finding of complete disability as defined by the Social Security Act.  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Furthermore, it is the role of the ALJ to determine whether a claimant is "disabled" within the meaning of the Social Security Act, and that determination is based on both medical and vocational components. *Edlund*, 253 F.3d at 1156.

Dr. Sikora's 2010 opinion that plaintiff is "disabled" was additionally rendered more than three years after her date last insured and is unsupported by objective medical findings. (Tr. 28).  While the record includes a medical report that plaintiff was examined by Dr. Sikora in October 2005, the appointment was for a recheck on her depression, and plaintiff only indicated a secondary concern of lower back pain at the time (Tr. 480-481). Dr. Sikora's 2005 exam revealed a pleasant female in no apparent distress, her gait was normal, her straight leg raise tests were negative, and her motor strength, sensation and reflexes in the

---

[1]Section 404.1567 of 20 C.F.R. defines sedentary work as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

lower extremities were within normal limits (Tr. 480).  This
October 2005 report does not evidence limitations greater than
those provided in the ALJ's RFC determination in this case.  Dr.
Sikora's 2010 opinion that Plaintiff has been disabled since her
2000 motor vehicle accident is not supported by his own records.
*See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an
ALJ may discredit a treating physician's opinion that is
unsupported by rationale or treatment notes and offers no
objective medical findings to support the existence of alleged
conditions).

The undersigned also finds it surprising that Dr. Sikora
would opine that plaintiff has been disabled since 2000.  First,
it does not appear that plaintiff was seen by Dr. Sikora until
2005 (Tr. 480-481).  He would thus have no firsthand knowledge of
her condition prior to 2005.  Second, the record reflects that
plaintiff worked from October 2001 to February 2002 as a part-time
cashier (Tr. 48).  It is therefore apparent that plaintiff was
able to continue to work after the 2000 motor vehicle accident.
Plaintiff additionally testified that she voluntarily ended that
employment because her manager wanted to make her a full-time
employee at that time (Tr. 47).  The fact that her manager wanted
to convert plaintiff from part-time to full-time employment in
February 2002 suggests that plaintiff's impairments did not
substantially limit her effectiveness as a cashier at that time.
This further undermines Dr. Sikora's opinion that plaintiff "has
been disabled since her MVA in 2000."

Based on the foregoing, the ALJ's decision to accord little
weight to Dr. Sikora's opinion that plaintiff has been disabled

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

since her motor vehicle accident in 2000 is fully supported by the record evidence.   The undersigned thus finds that the ALJ did not err by according Dr. Sikora's opinion little weight.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error.   Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 17**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 13**) is **DENIED.**

**IT IS SO ORDERED.**   The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

**DATED** this ___25th___ day of January, 2013

                    S/Fred Van Sickle
                    Fred Van Sickle
          Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17